IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TAIBU GRANT, DL-8437,	)
    Petitioner,	)
	)
    v.	)   2:10-cv-785
	)
MELVIN LOCKETT, et al.,	)
    Respondents.	)

MEMORANDUM and ORDER

Mitchell, M.J.:

Taibu Grant, an inmate at the State Correctional Institution at Pittsburgh has presented a petition for a writ of habeas corpus. For the reasons set forth below, the petition will be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

Grant is presently serving a life sentence imposed following his conviction, by a jury, of first degree murder at No. CC 199701537 in the criminal division of the Court of Common Pleas of Allegheny County, Pennsylvania. This sentence was imposed on October 22, 1997.[1]

An appeal was taken to the Superior Court in which the issues presented were:

I. Whether the identification evidence was insufficient to establish Mr. Grant as the shooter beyond a reasonable doubt, where the sole identifying witness based his identification on the general similarity between the popular jacket worn by the shooter and that worn by Mr. Grant, where his testimony was unreliable, and where three eyewitnesses, including a prosecution witness, testified that Mr. Grant was not the shooter.

II. Whether trial counsel was ineffective in failing to raise and preserve the issue

---

[1] See: Petition at §§ 1-6.

1

that the verdict of first degree murder was so against the weight of the evidence as to shock one's conscience given the insufficient, unreliable, speculative and contradictory identification testimony.

III. Whether the trial court erred in permitting into evidence and then instructing the jury that Mr. Grant was not licensed to carry a firearm, where this evidence was unsupported in the record, had no relevance, and only caused unfair prejudice.

IV. Whether trial counsel was ineffective in failing to call important exculpatory witnesses, and whether this issue must be remanded for an evidentiary hearing given the inadequate present state of the record.

V. Whether Mr. Grant is entitled to a new trial because of the prosecutor's failure to disclose critical criminal history pertaining to its sole identification witness, and whether this issue must be remanded given the inadequate state of the record.

VI. Whether the trial court erred in prohibiting defense counsel from impeaching Mr. Moore with his two crimen falsi convictions, where his testimony was essential to the verdict and remoteness did not outweigh the constitutional necessity of impeachment.

VII. Whether trial counsel was ineffective in failing to object to the prosecutors' improperly prejudicial closing argument, which vouched for the veracity of his key witness and which impermissibly infringed upon Mr. Grant's right to remain silent.

VIII. Whether trial counsel was ineffective in failing to secure a jury instruction on the absence of motive, where the lack of motive was a vital issue and the charge would have been given.

IX. Whether Mr. Grant is entitled to relief based upon the cumulative prejudicial effect of trial court, prosecutorial and trial counsel errors.[2]

On July 6, 2000, the Superior Court remanded the matter for the limited purpose of a determination of whether or not the weight of the evidence was sufficient to support the

---

[2] See: P. 50 of the exhibits to the answer. We note that with the exception of the reference to Davis v. Alaska, 415 U.S. 308 (1974) for the proposition that petitioner was entitled to introduce the prior record of Mr. Moore to demonstrate his potential bias, the Superior Court brief relies exclusively on Pennsylvania case and statutory law (See: pp.45-46 of the answer).

conviction. In all other respects, the conviction and sentence were affirmed.[3]

A petition for allowance of appeal to the Pennsylvania Supreme Court was filed in which the issues presented were:

> I. The Superior Court erred in refusing to remand the case for an evidentiary hearing and in ruling that the petitioner's claims were insufficient, where he was precluded from supplementing the record and perfecting his claims by this Court's very own rulings prohibiting reference to matters outside the record. Specifically, the Superior Court erred in failing to remand on the following issues:
>
>> A. Mr. Grant is entitled to a new trial because of the prosecutor's failure to disclose a critical criminal history pertaining to its sole identification witness which would have severely impeached his credibility.
>>
>> B. Trial counsel was ineffective in failing to call available exculpatory witnesses, both of whom would have provided critical testimony contradicting and impeaching that of the prosecution's only identification eyewitness.
>
> II. The trial court erred in prohibiting defense counsel from impeaching Mr. Moore with his two crimen falsi convictions, where his testimony was essential to the verdict and where remoteness did not outweigh the constitutional necessity of impeachment.
>
> III. The identification evidence was insufficient to establish Mr. Grant as the shooter beyond a reasonable doubt
>
> IV. The trial court erred in permitting into evidence and then instructing the jury that Mr. Grant was not licensed to carry a firearm, where this evidence was unsupported in the record, had no relevance, and only caused unfair prejudice.
>
> V. Trial counsel was ineffective in failing to object to the prosecutors' improperly prejudicial closing argument, which vouched for the veracity of his key witness and which impermissibly infringed upon Mr. Grant's right to remain silent.
>
> VI. Trial counsel was ineffective in failing to secure a jury instruction on the absence of motive, where the lack of motive was a vital issue and the charge

---

[3] See: Answer at pp. 140-149.

would have been given.[4]

On August 2, 2001, allowance of appeal was granted on issues I and IV only.[5] On December 31, 2002, the Supreme Court affirmed, ruling that claims of ineffective assistance should be raised in post-conviction proceedings; that the petitioner had failed to establish a <u>Brady</u> claim and that a concealed weapons instruction was appropriate.[6]

The petitioner subsequently filed a petitioner for a ruling on his post-sentence motion. Following a hearing, relief was denied and an appeal taken to the Superior Court in which the issues presented were:

> Whether the trial court abused its discretion in denying Mr. Grant's motion challenging the weight of the evidence, where the identification testimony of Mr Moore was so unreliable and contradictory as to render the ensuing verdict pure conjecture.
>
> And whether the trial court erred in simply accepting Mr. Moore's testimony without weighing all of the compelling conflicting evidence, where the testimony of this sole identifying witness was tenuous, vague and uncertain, where the inference that Mr. Grant was the shooter was based on similarity between a common and popular jacket worn by the actual shooter and that worn by Mr. Grant, where Moore admitted never having seen the shooter's face, where Moore's identification ignores undisputed evidence that all bullets had been fired from the same firearm at a completely different location, where all of the other eyewitness testimony established that Moore's identification testimony was speculative and unreliable, and where all other prosecution and defense eyewitnesses who had seen the shooter's face confirmed without contradiction

---

[4] See; Answer at p.159. We again note, that like the appeal to the Superior Court, the only reference to federal case law in the brief is to <u>Davis v. Alaska</u>, 415 U.S. 308 (1974) for the proposition that the defense was entitled to introduce Commonwealth witness Moore's criminal record to demonstrate his potential bias (See: Answer at pp.156, 175).

[5] See: Answer at pp.208-209.

[6] See: Answer at. P 341-358; <u>Com. v. Grant,</u> 572 Pa. 48 (2002)

that the shooter was not Mr. Grant.[7]

On August 30, 2006, the Superior Court affirmed the judgment of sentence.[8] A petition for allowance of appeal to the Pennsylvania Supreme Court was not filed.

Grant then filed a post-conviction petition in the Court of Common Pleas. That petition was dismissed on July 30, 2007.[9]

An appeal was taken to the Superior Court in which the issues presented were:

1. Whether the court erred in denying relief for reasons other than those identified in the pre-dismissal notice?

2. Whether trial counsel was ineffective for not calling available witnesses, Kim Oden and Marc Gee, to testify at trial?

3. Whether trial counsel was ineffective for failing to object to instructions on inference of intent to kill and malice from intentional use of deadly weapon on a vital part of the body?

4. Whether trial counsel was ineffective for failing to request a Kloiber instruction regarding the testimony of Chris Moore?

5. Whether trial counsel was ineffective for not requiring a cautionary instruction regarding prior consistent statements?

6. Whether trial counsel was ineffective for failing to investigate Chris Moore's criminal record and impeach him therewith?

7. Whether defendant is entitled to a new trial on the basis of after-discovered evidence of Graying Nickens?

8. Whether the Court of Common Pleas erred in denying relief on the basis that defendant's PCRA proceeding was untimely?

---

[7] See: Answer at p.459. We also observe that the issues presented to the Superior Court relied exclusively on Pennsylvania case law and statutes (See: Answer at p.455).

[8] Id at pp.557-565.

[9] Id. at p.678.

9. Whether PCRA counsel was ineffective in failing to preserve any of the foregoing claims/issues?[10]

On November 6, 2008, the denial of post-conviction relief was affirmed.[11]

A petition for allowance of appeal to the Pennsylvania Supreme Court was filed in which these same issues were raised.[12] On September 15, 2009, leave to appeal was denied.[13]

The instant petition was executed on June 8, 2010, and in it Grant contends he is entitled to relief on the following grounds:

> 1. Whether or not petitioner 6th amendment right to effective assistance of counsel under the U.S. Constitution for trial counsel's failure to object to the jury instructions on inference, on intent to kill, and malice from intentional use of a deadly weapon on a vital part of the body.
>
> 2. Whether or not petitioner was deprived of his amendment constitutional right to effective assistance was violated for trial counsel's failure to investigate the Commonwealths' key witness Chris Moores' criminal background.
>
> 3. Whether or not petitioner's 6th amendment right to effective assistance under the U.S. Constitution was violated for trial counsel's failure to request a cautionary identification <u>Kloiber</u> jury charge.
>
> 4. Whether or not petitioner's 6th amendment right to effective assistance of counsel under the U.S. constitution was violated for trial counsel's failure to request a cautionary consistent statement jury charge.
>
> 5. Whether or not petitioner was deprived of a fair trial, due process and confrontation clause, under the 6th and 14th amendment right under the U.S. constitution for the prosecutor's failure to disclose their key witness Chris Moore accurate background.

---

[10] Id. at p.697.

[11] Id. at pp. 828-835.

[12] Id. at p. 844.

[13] Id. at p.903.

6. Whether or not petitioner's 6th amendment right to effective assistance of counsel under the U.S. constitution for trial counsel failure to investigate and call Marc Gee and Kim Oden as witnesses for the defense.[14]

It is provided in 28 U.S.C. §2254(b) that:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413

---

[14] See: Petitioner's brief at p.i "Questions present for review".

(2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

In Bronshtein v. Horn, 404 F.3d 700, 723 (3d Cir.2005), cert .denied 546 U.S. 1208 (2006), the Court held:

> We must thus decide whether the state supreme court's "adjudication of the claim ... resulted in a decision that was *contrary to*, or involved *an unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States...
>
> A state court adjudication is "contrary to" Supreme Court precedent if it results from the application of "a rule that contradicts the governing law set forth" by the Supreme Court or is inconsistent with Supreme Court decision in a case involving "materially indistinguishable" facts ... "A state court decision fails the 'unreasonable application' prong only 'if the court identifies the correct governing rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case or if the state court either unreasonably extends a legal principle from the Supreme court's precedent to a new context where it should not apply or unreasonably refuses to extend the principle to a new context where it should apply...(citations omitted).

In the instant case, it would appear that Grant has presented issues 1,2,3,4 and 6 to the state courts in his post-conviction proceedings, and his issue 5 in his petition for allowance of appeal from the judgment of sentence.[15] However, since the issues or their functional equivalents

---

[15] See: Answer at p. 159.

8

were presented to the courts of the Commonwealth in the first instance as possible federal violations or under comparable federal law, the matters a properly before this Court for consideration. Greene v. Palakovich, 606 F.3d 85 (3d Cir. 2010). Issues 1, 2, 3, 4 and 6 concern the allegations of the denial of the effective assistance of counsel, while issue 5 arises under the fair trial/due process/confrontation provisions of the 6th and 14th Amendments.

The background to this prosecution is set forth in the July 6, 2000 Memorandum of the Superior Court:

> On the night in question, the victim Keith Gilliam and his wife were leaving the Where It's At Bar when gun shots rang out, fatally wounding Gilliam. Shortly thereafter, a maroon car drove by and a second round of shots rang out, wounding two other people. Various witnesses testified to the details of the shootings, the police response, and the forensic evidence.
>
> Only one witness, Christopher Moore, testified to the identity of the shooter and it is this evidence which Appellant claims was insufficient. Moore testified that he was standing on his back porch when he heard the shots and looked toward the street. He saw a man firing a weapon. He was unable to see the shooter's face but noticed he was wearing a blue hooded jacket with a four-inch light stipe around the waist, blue jeans and sneakers. After he saw the man flee, Moore walked down his porch steps and headed away from the bar. At that point, Appellant, dressed in the exact same clothing as the shooter, ran by Moore yelling, "I had to let loose on those niggers." Moore instantly recognized Appellant whom he had known for approximately six months.[16]

Five of the issues which the petitioner raises here concern the alleged ineffectiveness of counsel.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires

---

[16] Id. At pp.141-142.

9

showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987), cert. denied, 484 U.S. 863 (1987). As a result, if a petitioner fails on either prong, he loses. Holladay v. Haley, 209 F.3d 1243, 1248 (11th 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.")(citations omitted); Foster v. Ward, 182 F.3d 1177, 1184 (10th Cir. 1999) ("This court may address the performance and prejudice components in any order, but need not address both if Mr. Foster fails to make a sufficient showing of one.")

The petitioner's first contention is that counsel was ineffective for failing to object to the trial court's instruction on inference, intent to kill and malice from the intentional use of a deadly weapon. The petitioner was charged with first degree murder which under Pennsylvania statute is defined as an intentional killing. 18 Pa.C.S.A. 2502(a). An "intentional killing" is one "by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing."

10

18 Pa.C.S.A. 2502(d). Under Pennsylvania law, the specific intent to kill may be established by the use of a deadly weapon upon a vital part of the victim's body. Purcell v. Horn, 187 F.Supp.2d 260 (W.D.Pa.2002); Com. v. Regan, 743 A.2d 390 (Pa. 1999). In the present case, the jury instruction provided:

> [A] killing is with malice if the killer acts with either an intent to kill or an intent to inflict serious bodily harm or a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences and a mind regardless of social duty indicating an unjustified disregard for the probability of death or great bodily harm, and an extreme indifference to the value of human life, and a conscious disregard of an unjustified and extremely high risk that his actions might cause death or serious bodily harm.
>
> First degree murder is a murder in which the killer has the specific intent to kill... a killing is with specific intent to kill if it is willful, deliberate and premeditated. The specific intent to kill, including the premeditation needed for first degree murder, does not require planning or previous thought or any particular length of time. It can occur quickly. All that is necessary is that there be time enough so that the Defendant can and does fully form an intent to kill and is conscious of that intention.... If you believe that the Defendant intentionally used a deadly weapon on a vital part of the victim's body, you may regard that as an item of circumstantial evidence from which you may, if you choose, infer that the Defendant had the specific intent to kill (TT.492-494).[17]

Thus, the court's instruction correctly set forth the relevant Pennsylvania law, and counsel cannot be faulted for failing to object to a non-issue. For this reason counsel's performance cannot be said to have fallen below an objective standard of reasonableness. Jermyn v. Horn, 266 F.3d 257 (3d Cir.2001).

Grant's next allegation is that counsel was deficient for failing to investigate the criminal background of Moore, the Commonwealth's key witness. In support of this proposition, the petitioner alleges that at the time of the homicide, Moore was in violation of his state parole and

---

[17] Record references marked "TT" refer to the trial transcript commencing on September 16, 1997.

11

thus, his proffered testimony was an attempt on his part to receive more favorable treatment from the courts. It is this claim that Grant contends defense counsel should have investigated. However, other than his bald allegations, the petitioner has not presented any support for his conclusion.[18]

In raising this issue the petitioner cites to Davis v. Alaska, 415 U.S. 308 (1974) which held that the defense is entitled to challenge the credibility a prosecution witness on the basis of his prior criminal record. Thus, a conclusion cannot be reached that Moore's testimony was tainted based on the mere speculation of the petitioner, and for this reason he cannot claim prejudice. In addition, it should be observed that at trial, defense counsel did thoroughly cross-examine the witness about his possible alcohol consumption prior to the incident and his ability to have witnessed the events about which he testified, thus calling his credibility into question (TT.173-188). Nor, under Pennsylvania law was Moore's prior drug conviction admissible since it is not regarded as crimen falsi. Com. v. Causey, 833 A.2d 165 (Pa.Super.2003), allocator denied 577 Pa.732 (2004). Thus, the petitioner has failed to demonstrate that counsel's performance was deficient or that he suffered any prejudice as a result of his mere unsupported speculation about the motive of Moore in testifying for the prosecution. For this reason, this claim does not provide a basis for relief.

Grant next contends that counsel's performance was deficient for failing to request a Kloiber instruction. In Com. v. Kloiber, 378 Pa. 412, 424 (1954), the Pennsylvania Supreme Court instructed that a cautionary instruction is appropriate where a witness' ability to clearly

---

[18] As the post-conviction court observed, "the Defendant ... provides no documentation that Mr. Moore was in fact on parole during the relevant time period. Further, no documentation is provided that would lead anyone to think Mr. Moore was treated in a favorable fashion in return for his cooperation with law enforcement" (Answer at p. 689).

observe that about which he testifies is subject to challenge.

First, we observe that this instruction is grounded solely on Pennsylvania law and as such is not a basis for relief here. Taylor v. Horn, 504 F.3d 416 (3d Cir.2007), cert. denied 129 S.Ct. 92 (2008). Additionally, we note that even under Pennsylvania law, the instruction was not warranted, since the witness testified on both direct and cross-examination that his view of the homicide was not based on an inadequate ability to observe which would warrant a Kloiber, instruction, but rather on the quality of his observations, a matter that was thoroughly explored on cross-examination (TT. 150-180). See: Com. v. Cleveland, 703 A.2d 1046 (Pa.Super.1997). For these reasons, this allegation does not demonstrate that counsel's performance was deficient and does not provide a basis for relief here.

The next allegation which Grant raises is that counsel was ineffective for failing to request a cautionary consistent statement jury instruction. Specifically in this regard, at trial Moore testified that he had encountered the petitioner immediately after the shooting and that Grant yelled "I had to let loose on them niggers" (TT.159). On cross-examination, Moore was questioned regarding conflicts between his trial testimony and his earlier testimony at the coroner's inquest in which discrepancies existed as to how must time elapsed between the time he left the "Where It's At" bar and the occurrence of the homicide and whether or not he had consumed alcohol at the bar prior to the homicide (TT. 181-184). On re-direct examination, the prosecutor attempted to demonstrate that while some conflict existed between his trial testimony and his earlier testimony at the inquest, he was consistent on the salient issues (TT.193-204).

While an appropriate instruction might have been helpful, in her opinion denying post-conviction relief, the trial court observed that if such an instruction had been requested, it would

13

have been denied as being baseless.[19] For this reason, counsel's failure to make a request was immaterial and his conflicting testimony would have been encompassed by the court's general instruction on credibility (TT.490-491). Thus, there is no basis upon which counsel could be deemed to have been ineffective.

The final allegation regarding ineffective assistance of counsel that Grant makes is that counsel failed to investigate and call Marc Gee and Kim Oden as defense witnesses. In reviewing this allegation, the post-conviction court observed:

> This argument made by the Defendant, however, must fail because there is no indication that trial counsel knew of the existence of the witnesses other than the Defendant's bald assertion regarding trial counsel's knowledge. Neither of the alleged witnesses' affidavits presented to the Court by the Defendant for review indicate that counsel was aware of the witnesses. Further, the Defendant fails to attach an affidavit from trial counsel as to his knowledge... The Defendant stated in his amended PCRA Petition that the witnesses in question were subpoenaed, but the Defendant did not submit these subpoenas to the Court for examination [20]

Appended to the instant application for relief, Grant has submitted as Exhibit K an affidavit dated February 16, 2004 from Marc L. Gee indicating that he knew Grant; that he observed the shooting on January 8, 1997 and that Grant was not the shooter, however, his observation was made after the victim had been shot (See: ¶ 6 of the affidavit) and concerned a shooting which occurred subsequent to the time of the homicide . He also averred that although subpoenaed to testify at the trial, he was dismissed by defense counsel. The petitioner has also submitted as Exhibit L the October 31, 2005 affidavit of Kim Oden also attesting to the fact that she knew the petitioner; that she observed the January 8, 1997 events, and that Grant was not the

---

[19] See: Answer at pp.688-689.

[20] Id. at p.687.

14

shooter. She also stated that she was afraid of the people who had committed the homicide; that she avoided contacting anyone about it after her initial police interview and that she was never interviewed by Grant's defense attorney about the events.

While contrary to the post-conviction court's finding, the Gee affidavit does indicate that his potential testimony was known to defense counsel. However, even if the testimony of these witnesses had been presented, it would have been merely cumulative of the testimony of defense witnesses Bonner and Butler who testified that they were present during the shooting and that the petitioner was not the shooter (TT.358- 359, 384-385). For this reason, even if counsel was aware of the testimony, it would have merely been cumulative of other testimony presented, and it cannot be concluded that a different result would have occurred if the jury had heard that testimony.

Thus, as a matter of law, we conclude that the performance of counsel met the Strickland standard, and the petitioner's claims regarding counsel's alleged ineffectiveness are meritless.

The final issue which the petitioner seeks to raise here is whether or not he was denied as fair trial as a result of the prosecutor's failure to disclose the criminal background of his key witness, Chris Moore, in violation of Brady v. Maryland, 373 U.S. 83 (1963). More specifically Grant contents that the prosecution failed to disclose that Moore had a prior conviction for crimen falsi, and that he was on parole at the time he testified.

In Brady, the Court held that upon request it is a due process violation for the prosecutor to withhold evidence favorable to the defense. However, "there are three components to a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully

or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-282 (1999).

At trial, prior to Moore's testimony and out of the presence of the jury, a discussion was held between the prosecutor, defense counsel and the court in which defense counsel stated that he had received a copy of Moore's criminal record which demonstrated that fourteen years prior to trial, in December 1983, Moore had been convicted of burglary; that under Pennsylvania Rule of Evidence 609(b), a conviction or release from custody more than ten years previously may not be used for impeachment purposes unless the court determines that the interest of justice warrant its admission, and that over the objection of defense counsel, the court excluded the 1983 conviction (TT. 133-140).[21] Thus, as a matter determined solely under Pennsylvania evidentiary rules, it is not a matter for federal concern, unless it can be demonstrated that a due process violation occurred. We also observe that the same conclusion would be drawn under the provisions of F.R.Evid. 609(b).

In the instant case, Moore's prior criminal record of crimen false was disclosed but barred from use under evidentiary rules. While there is no demonstration that Moore's subsequent criminal conviction for a drug violation and his status as a parolee had been disclosed, as previously noted, in Pennsylvania a drug conviction cannot be used for impeachment, and the existence of this conviction was readily available to the defense. As such, any failure to disclose did not constitute a Brady violation. See: United States v. Starusko, 729 F.2d 256 (3d Cir.1984).

Thus, there is nothing in the record which demonstrates that Grant's conviction was

---

[21] The discussion also noted that Moore was sentenced effective December 23, 1983 to one year and a day to two years less two days, and thus his sentence would have expired at the latest in December 1985 or twelve years prior to the Grant's trial (TT.139-140).

obtained in any manner contrary to the laws of the United States as determined by the United States Supreme Court, and for this reason, there is no basis for relief here. Accordingly, the petition of Taibu Grant for a writ of habeas corpus will be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

    An appropriate Order will be entered.

ORDER

AND NOW, this 18th day of August, 2010, for the reasons set forth in the foregoing Memorandum, the petition of Taibu Grant for a writ of habeas corpus is dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability is denied.

                                              s/ Robert C. Mitchell
                                              United States Magistrate Judge